IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| DR. LUIS B. RIVERA-NAZARIO, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> CORPORACION DEL FONDO DEL SEGURO DEL ESTADO, *et al.*, <br><br> **Defendants.** | CIVIL NO. 14-1533 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

This matter is before the Court on Defendants' renewed Motion to Dismiss Plaintiffs' claims under the Sherman Antitrust Act ("Sherman Act") pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 83. Plaintiffs timely opposed. Docket No. 84. Plaintiffs, a group of licensed chiropractors and chiropractic clinics, sued Defendants, the Corporacion del Fondo del Seguro del Estado ("CFSE") and several CFSE directors and officials,[1] alleging, *inter alia*, that Defendants violated Section 1 and Section 2 of the Sherman Act by illegally discriminating against chiropractors and taking steps to exclude them from the services provided by the CFSE. Docket No. 28.

---

[1] These officials are: Liza M. Estrada ("Estrada") in her official capacity as Administrator of CFSE; Sheila Rivera-Serrano ("Rivera-Serrano") in her personal and official capacity as Director of the CFSE Medical Area; Maria I. Lastra-Gonzalez ("Lastra-Gonzalez") in her personal and official capacity as Medical Director at the CFSE Bayamon Regional Office; Jose Colon-Grau ("Colon-Grau") in his personal and official capacity as an External Advisor; and Lorena Diaz-Trancon ("Diaz-Trancon") in her personal and official capacity as a Type VII Internal Medical Council of CFSE.

There are two issues before the Court. The first issue is whether Plaintiffs' claims should be dismissed because Defendants are immune from Sherman Act liability under the doctrine of state-action antitrust immunity of *Parker v. Brown*, 317 U.S. 341 (1943). The second issue is whether Plaintiffs have failed to plead successful claims under Sections 1 and 2 of the Sherman Act. The Court GRANTS Defendants' Motion to Dismiss and hereby dismisses Plaintiffs' Sherman Act claims *with prejudice* because Defendants are immune from Sherman Act liability under *Parker*. Since Defendants are immune, the Court does not address the second issue concerning the sufficiency of Plaintiffs' claims.

## BACKGROUND

### A. Factual Background[2]

The CFSE is a public corporation created by the Puerto Rico legislature for the purpose of carrying out the Puerto Rico Compensation System for Work-Related Accidents Act ("Worker's Compensation Act" or "Act"). P.R. Laws Ann. tit. 11 §§ 1, 1b. Every employer covered by the Act is required to insure its workers through the CFSE, and CFSE compensation is the exclusive remedy available to an injured worker. P.R. Laws Ann. tit. 11 §§ 19, 21. Private insurance companies are not allowed to offer worker's compensation insurance to employers in Puerto Rico, Docket No. 28, thus ensuring that the CFSE is the only provider of worker's compensation insurance in Puerto Rico. The CFSE is tasked with creating a worker's compensation system that complies with the policies stated under the Act, P.R. Laws Ann. tit. 11

---

[2] For purposes of Defendants' Motion to Dismiss, all facts in Plaintiffs' Amended Complaint, Docket No. 28, are presumed to be true.

§ 1b-3, and it is empowered to establish a program to "achieve the physical as well as vocational rehabilitation" of injured employees, P.R. Laws Ann. tit. 11 § 1b-1. The Puerto Rico legislature empowered the CFSE with "all the necessary or convenient powers" to be able to accomplish its mission, including the authority to enter into contracts, among others. *Id.*

The CFSE is governed by a seven member Board of Directors ("BOD"). P.R. Laws Ann. tit. 11 § 1b-2. All seven members are appointed by the Governor of Puerto Rico and can be removed by the Governor for just cause. *Id.* Of the seven BOD members, one "shall be the Insurance Commissioner, who is a person of great technical competence in the insurance area; one shall be identified with the employers, another one . . . shall be identified with the employees . . . and two (2) members shall be officials of the Departments of Labor and Human Resources, and Health . . . . The two (2) remaining members . . . shall be freely selected." *Id.* The CFSE also contains a seven member Industrial Medical Council (IMC), which consists of four (4) medical doctors, a Health Services Administrator, a professional nurse and a specialist in vocational rehabilitation. P.R. Laws Ann. tit. 11 § 1c. The IMC is tasked with designing guidelines for the adequate treatment of most medical conditions for employees who receive benefits from the CFSE. *Id.* However, these guidelines must be ratified by the governing BOD. *Id.*

Plaintiffs allege that Defendants have engaged in a pattern to discriminate against chiropractors and to exclude them from CFSE services from 2003 up to the present. Docket No. 28. According to the Amended Complaint, Defendants, in particular Defendant Lastra-Gonzalez, have denied contracts to several chiropractors, including Plaintiffs, without any reasonable cause. *Id.* Defendant Lastra-Gonzalez also sent an internal memo to the CFSE's regional medical directors instructing them to cease all referrals of new patients for chiropractic treatment during

a three-week period. *Id.* Moreover, Defendant Lastra-Gonzalez began to spread the rumor that the CFSE was in the process of eliminating chiropractic care from the CFSE's compensated services due to its harmful side effects and the ineffectiveness of the treatment. *Id.* To this day, some physicians opt not to refer patients to chiropractors due to the dissemination of this information. Defendant Lastra-Gonzalez has denied referrals to chiropractors even after the patients' physicians approved the treatment. *Id.*

On August 9, 2013, the CFSE issued a letter concerning the adoption of new guidelines and policies regarding chiropractic services and patient referrals. *Id.* The letter discussed in an inflammatory and exaggerated manner the contraindications and side effects of chiropractic treatment. *Id.* This letter, which was signed by Defendant Rivera-Serrano, was sent to 9 regional directors and 310 occupational primary care physicians, as well as several patients. *Id.* Despite this, Defendants Rivera-Serrano and Colon-Grau have denied the existence of the letter and the new guidelines to Plaintiffs on various occasions. *Id.*

The new guidelines require a physician that wishes to refer an injured worker to a chiropractor to comply with several new onerous requirements that only apply to chiropractic services. *Id.* The guidelines also reduced the maximum number of covered chiropractic treatments, and any extension must be authorized by the regional medical director. *Id.*

B.  **Procedural Background**

The Court is evaluating Defendants' renewed Motion to Dismiss, which only concerns Plaintiffs' Sherman Act claims. Docket No. 83. Plaintiffs originally asserted against Defendants, *inter alia*, violations of the Sherman Act, Due Process Clause, Equal Protection Clause, Contract

Clause, the First Amendment, and Puerto Rico law. Docket No. 28. Defendants filed two Motions to Dismiss all of Plaintiffs' claims. Docket Nos. 30 and 44. On September 9, 2015, this Court issued an Opinion and Order granting in part Defendants' motions and dismissing *with prejudice* Plaintiffs' Due Process Clause, Equal Protection Clause, and Contract Clause claims. Docket No. 77. The Court also dismissed *with prejudice* Plaintiffs' First Amendment claims only as to Defendants Lastra-Gonzalez, Diaz-Trancon, Rivera-Serrano, and Colon-Grau. *Id.* The Court denied Defendants' Motions to Dismiss as to Plaintiffs' First Amendment claims against the CFSE and Defendant Estrada; and Plaintiffs' Puerto Rico law claims. *Id.* Finally, the Court denied *without prejudice* Defendants' Motions to Dismiss as to Plaintiffs' Sherman Act claims. *Id.* The Court gave Defendants an opportunity to renew their motion only as to these claims because a key Supreme Court decision had come out after Defendants' original Motions to Dismiss and because the relevant issues were not briefed properly by either party.  *Id.*

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

Civil No. 14-1533 (JAG)                                                                                          6

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

Defendants argue that Plaintiffs' Sherman Act claims should be dismissed for two reasons. Docket No. 83. First, Defendants contend that they are immune from Sherman Act liability under the state-action doctrine of *Parker v. Brown*, 317 U.S. 341 (1943). Docket No. 83 at 1-8. Second, Defendants assert that Plaintiffs have failed to state a claim under either Section 1 or Section 2 of the Sherman Act. *Id.* at 8-15.

The Court grants Defendants' Motion to Dismiss because Defendants' actions are immune from Sherman Act liability under *Parker* immunity. As a preliminary matter the Court determines that the CFSE is a nonsovereign actor and to qualify for *Parker* immunity, it must satisfy the two part test set forth in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) to show that its anticompetitive conduct "result[s] from procedures that suffice to make it the State's own." *See N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1111 (2015). The Court holds that the Defendants have met *Midcal*'s first requirement, the clear articulation requirement, because each of Defendants' actions was either expressly

authorized by the Puerto Rico legislature or was the foreseeable result of the legislature's delegation of authority. The Court also holds that Defendants were exempt from *Midcal*'s second requirement, the active supervision requirement, because the CFSE is a public subdivision of the State, not a private actor, and it does not pose a risk that active market participants will pursue private interests in restraining trade. Accordingly, all of Defendants' actions are immune from Sherman Act liability under *Parker* and all of Plaintiffs' Sherman Act claims against Defendants are dismissed.[3] Since Plaintiffs' claims are dismissed pursuant to the *Parker* state-action doctrine, the Court need not address whether Plaintiffs sufficiently pled their claims.

### A. The State-Action Doctrine Generally

The state-action doctrine, commonly called *Parker* immunity, immunizes state efforts to displace competition with regulation from federal antitrust laws.[4] *See Parker v. Brown*, 317 U.S. 341 (1943).  In *Parker*, the Supreme Court interpreted the Sherman Act to confer immunity on state anticompetitive conduct when a state acts in its sovereign capacity. 317 U.S. at 351-52 (1943); *see also Bd. of Dental Examiners*, 135 S. Ct. at 1110. "State legislation and 'decisions of a state supreme court, acting legislatively' . . . are an undoubted exercise of state sovereign authority" and are

---

[3] Even though Plaintiffs have sued CFSE officials in both their personal and individual capacity in addition to the CFSE, Plaintiffs are suing them based on their conduct as CFSE officials. Plaintiffs cannot circumvent the doctrine of *Parker* immunity by simply suing the state agency officials that engaged in the challenged activity, rather than the state agency itself. *See Fisichelli v. City Known as Town of Methuen*, 956 F.2d 12, 15-16 (1st Cir. 1992). Accordingly, Plaintiffs' claims against the individual Defendants are also dismissed.

[4] The *Parker* state-action immunity doctrine should not be confused with the state-action doctrine under the Fourteenth Amendment. They are two completely different doctrines.

thus automatically exempt from the Sherman Act. *Bd. of Dental Examiners*, 135 S.Ct. at 1110 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 567-68 (1984)).

While *Parker* antitrust immunity has been extended to state subdivisions (e.g., agencies and public corporations) and private parties that act pursuant to the sovereign power of the State, it is clear that these nonsovereign entities "do not receive all the federal deference of the States that create them." *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 412-13 (1978). "[A] nonsovereign actor is one whose conduct does not automatically qualify as that of the sovereign State itself." *See Bd. of Dental Examiners*, 135 S.Ct. at 1110-11. In other words, it is an actor other than the state legislature, or the state supreme court, acting legislatively. The CFSE is neither one of these. It is a public corporation. Therefore, for purposes of *Parker* immunity there is no doubt that the CFSE is a nonsovereign actor.

For *Parker* immunity to be extended to a nonsovereign actor, the actor must show that its anticompetitive conduct "result[s] from procedures that suffice to make it the State's own." *Bd. of Dental Examiners*, 135 S. Ct. at 1111. To do this, a nonsovereign actor must meet two possible additional requirements set forth in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). First, all nonsovereign actors must show that the challenged restraint is one clearly articulated and affirmatively expressed as state policy. *See F.T.C. v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010-11 (2013). Second, some actors also must comply with the additional requirement that their actions be actively supervised by the State. *Id.* Since the CFSE is a nonsovereign actor, the Court evaluates whether its conduct meets this two part test.

### B. The Clear Articulation Requirement

The Court holds that Defendants have satisfied the clear articulation requirement. Any nonsovereign actor seeking *Parker* immunity must show that its actions are undertaken "pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Phoebe Putney Health Sys., Inc.*, 133 S. Ct. at 1011 (2013) (quoting *Community Communications Co. v. Boulder*, 455 U.S. 40, 52 (1982)). In doing so, the actor need not "point to a specific, detailed legislative authorization," but rather, show that the "legislature contemplated the kind of action complained of." *Louisiana Power & Light*, 435 U.S. at 415; *see also Corey v. Look*, 641 F.2d 32, 37 (1st Cir. 1981). This burden, also known as the "clear articulation" requirement, is met so long as the challenged action is a "foreseeable result" of the State's authorization. *Phoebe Putney Health Sys., Inc.*, 133 S. Ct. at 1011. If the displacement of competition is the "inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature" then "the State must have foreseen and implicitly endorsed" the anticompetitive effects of its delegation. *Id.* at 1012-13.

It is unclear from Plaintiffs' Amended Complaint what actions Plaintiffs base their antitrust claims on. However, the Court is able to discern the following potential anticompetitive conduct that Plaintiffs allege Defendants engaged in: 1) refusing to enter into or to renew service agreements with chiropractors; 2) issuing new guidelines regarding chiropractic services which reduce the number of approved chiropractic visits for CFSE patients; 3) establishing extra requirements for CFSE approval of chiropractic services that are not required for other medical services; 4) denying or decreasing the number of referrals to

chiropractors versus other medical professionals; 5) and communicating information to doctors about the negative effects of chiropractic services. Docket No. 28.

All of these alleged anticompetitive actions comply with the clear articulation requirement. Defendants' first two alleged anticompetitive acts —refusing or renewing service agreements (contracts) and issuing new guidelines concerning the chiropractic care approved by the CFSE— are specifically authorized by the Worker's Compensation Act. *See* P.R. Laws Ann. tit. 11 § 1b-4 (authorizing the CFSE's administrator to award contracts to health professionals as may be necessary for the treatment of injured workers); P.R. Laws Ann. tit. 11 § 1c (authorizing the CFSE to design guidelines for the adequate treatment of the most common medical conditions suffered by employees, including a general description of the treatment, the frequency of medical appointments, and the maximum treatment period for a condition). Therefore, it is clear that the legislature contemplated the CFSE taking these actions. *See Louisiana Power & Light*, 435 U.S. at 415.

Defendants' other three alleged anticompetitive acts —establishing extra requirements for approving chiropractic services; denying or decreasing referrals to chiropractors; and communicating information about the adverse effects of chiropractic services— are all "inherent, logical, or ordinary" results of the legislature's delegation to the CFSE to establish treatment programs and procedures to be followed for worker's compensation patients. The Puerto Rico legislature created the CFSE to be the only worker's compensation insurance provider in Puerto Rico and to enforce the provisions of the Worker's Compensation Act. *See* P.R. Laws Ann. tit. 11 §§ 1, 1a, 1b, 1b-1, 19, 21. In carrying out its responsibilities, the CFSE has the express authority to establish a program to "achieve the physical as well as vocational rehabilitation" of injured

workers, P.R. Laws Ann. tit. 11 § 1b-1, and to design guidelines for the adequate treatment of common medical conditions, P.R. Laws Ann. tit. 11 § 1c. The inherent result of this delegation of authority is that the CFSE would evaluate the efficacy of competing medical professionals and services to establish the best rehabilitation program and treatment procedures. Inevitably, the CFSE would have to determine that certain services were better than others and for the services that the CFSE deemed inferior —in this case chiropractic services[5]— it is reasonable and logical for the CFSE to take the adverse actions that it has taken against chiropractors to best provide for the rehabilitation of injured employees. *See* P.R. Laws Ann. tit. 11 § 1b-1. Therefore, each of these challenged actions was a foreseeable result of the legislature's delegation of authority.

Plaintiffs argue that the CFSE does not meet the clear articulation requirement because Defendants have failed to show "that the Commonwealth itself supports the monopolization of spinal treatment to medical professionals other than chiropractors." Docket No. 84 at 5. However, Plaintiffs impose an overly difficult burden for Defendants to satisfy. Defendants must only show that the alleged anticompetitive acts the CFSE engaged in were the "inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *Phoebe Putney Health Sys., Inc.*, 133 S. Ct. at 1012-13. Therefore, Defendants do not have to show that the Puerto Rico legislature specifically supports the removal of chiropractors from the worker's compensation market. It is sufficient that Defendants show that the legislature authorized the

---

[5] Plaintiffs refute the CFSE's judgment concerning the medical efficacy of chiropractic treatment. Docket No. 28. However, whether the CFSE's judgments are correct or medically sound is irrelevant. It is not for this Court to determine whether chiropractic services are an effective treatment for Puerto Rican injured workers' back injuries. The critical inquiry is whether the Puerto Rico legislature has authorized the CFSE to make those judgments —which it has.

CFSE to determine which medical professionals will treat worker's compensation patients — which they have— because the logical result of this delegation is that the CFSE would exclude certain medical professionals over others. Thus, all of the CFSE's alleged anticompetitive actions are taken pursuant to clearly articulated state policy to displace competition, and the clear articulation requirement is met.

### C. The Active Supervision Requirement

The Court holds that Defendants are exempt from complying with the active supervision requirement. The next step in the *Parker* immunity test requires some nonsovereign actors to prove that their anticompetitive conduct is "actively supervised by the State." *Phoebe Putney Health Sys., Inc.*, 133 S. Ct. at 1010-11. This "active supervision" requirement serves the evidentiary function of "ensuring that the actor is engaging in the challenged conduct pursuant to state policy." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 (1985). However, "there are instances in which a [nonsovereign] actor can be excused from [the] active supervision requirement." *Bd. of Dental Examiners*, 135 S. Ct. at 1112. Private parties seeking *Parker* immunity must always satisfy this requirement. *See Hallie*, 471 U.S. at 46-47. On the other hand, when the nonsovereign actor is a public subdivision of the State, a court must look at the risk that active market participants will use anticompetitive conduct to pursue private interests to determine if the requirement applies. *See Hallie*, 471 U.S. at 46-47; *Bd. of Dental Examiners*, 135 S. Ct. at 1114. In this case, the CFSE is a public corporation with a public mission and its board members are appointed by the Governor of Puerto Rico. P.R. Laws Ann. tit. 11 §§ 1b, 1b-2. Therefore, the Court will evaluate the

CFSE as a public nonsovereign actor, not a private party, and thus the CFSE is not automatically required to comply with the active supervision requirement as private parties are.

Instead, to evaluate whether the CFSE is exempt from the active supervision requirement, this Court must evaluate whether the CFSE poses a risk that active market participants will pursue anticompetitive conduct in their own private interests. *See Hallie*, 471 U.S. at 46-47; *Bd. of Dental Examiners*, 135 S. Ct. at 1114. In *Hallie*, the Court held that municipalities did not have to satisfy the active supervision requirement because there was little or no risk that a municipality was engaged in private anticompetitive conduct. 471 U.S. at 46-47. Until recently, courts had uniformly interpreted *Hallie* to mean that any state agency or subdivision did not have to satisfy the active supervision requirement. *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application 466 (2nd ed. 2000). However, the Supreme Court recently clarified that the applicability of the requirement does not turn on the formal designation given to the actor, but instead must turn on "the risk that active market participants will pursue private interests in restraining trade." *Bd. of Dental Examiners*, 135 S. Ct. at 1114.

In *Board of Dental Examiners*, the Supreme Court held "that a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy [the] active supervision requirement" to invoke *Parker* immunity. *Id.* at 1114. The case concerned efforts by the North Carolina State Board of Dental Examiners (the "Board") to exclude nondentists from offering teeth whitening services. *Id.* at 1108. The Federal

Trade Commission (FTC) sued the Board alleging violations of Federal antitrust law. *Id.* at 1108-09. The Board moved to dismiss, alleging *Parker* state-action immunity. *Id.* at 1109.

The Board argued that since the State had designated the Board a state agency, N.C. Gen. Stat. Ann. § 90-22, that it was exempt from the active supervision requirement. *Bd. of Dental Examiners*, 135 S. Ct. at 1113. However, the Court rejected this formalistic approach and explained that "the need for supervision turns not on the formal designation given by states to regulators but on the risk that active market participants will pursue private interests in restraining trade." *Bd. of Dental Examiners*, 135 S. Ct. at 1114. The Court held that the active supervision test "is an essential prerequisite of *Parker* immunity for any nonsovereign entity —public or private— *controlled by active market participants*." *Id.* at 1113 (emphasis added). The Court reasoned that state agencies controlled by active market participants who possess strong private interests "pose the very risk of self-dealing [the] supervision requirement was created to address." *Id.* at 1114. The Court distinguished *Hallie* because the entity there "was an electorally accountable municipality with general regulatory powers and no private price-fixing agenda." *Id.* at 1114.

This case is not controlled by the holding in *Board of Dental Examiners* and instead is more analogous to the situation in *Hallie*. There are two reasons why this case is different than *Board of Dental Examiners*. First, the CFSE is not controlled by active market participants as the Board was in *Board of Dental Examiners*. Second, even if *Board of Dental Examiners* is interpreted more broadly, the CFSE does not pose the risk that active market participants will pursue private interests that the Court was concerned with in *Board of Dental Examiners*. Instead, as in *Hallie*, the small risk

that the CFSE will pursue its own specific interests rather than "more overriding state goals" is sufficiently mitigated by the clear articulation requirement.

Unlike the Board in *Bd. of Dental Examiners*, the CFSE is not controlled by active market participants. In *Bd. of Dental Examiners*, six of the Board's eight members had to be licensed practicing dentists who were elected by other licensed dentists in North Carolina and there was no mechanism for a public official to remove any of the Board's elected members. 135 S. Ct. at 1108. These dentists clearly competed with nondentists in the market for teeth whitening services and had strong private interests to exclude nondentists from competition. Therefore, the need for state supervision was manifest. In contrast, the Governor of Puerto Rico appoints all seven members of the CFSE's governing Board of Directors ("BOD"). P.R. Laws Ann. tit. 11 § 1b-2. Of the seven members, one "shall be the Insurance Commissioner, who is a person of great technical competence in the insurance area; one shall be identified with the employers, another one . . . shall be identified with the employees . . . and two (2) members shall be officials of the Departments of Labor and Human Resources, and Health . . . . The two (2) remaining members . . . shall be freely selected." *Id.* Therefore, none of the CFSE's BOD's members are required to be active market participants that compete with chiropractors in the worker's compensation market.[6] At most, there could be two members —the freely selected members— out of the seven that might be active market participants, and even this seems unlikely given the Worker's Compensation Act's focus on having BOD members with expertise in insurance and labor

_____

[6] Plaintiffs' complaint also fails to allege that any of the BOD's members are active market participants that compete with chiropractors.

matters, rather than medical expertise. *See id.* Thus the CFSE is not controlled by active market participants.[7]

Furthermore, the CFSE does not pose the risk that active market participants will use CFSE policy to pursue private interests that the Court was concerned with in *Board of Dental Examiners* for three reasons.

First, Plaintiffs have failed to plead that any CFSE officials are actually active market participants that compete with chiropractors in the worker's compensation market. Plaintiffs point out that four of the seven members of the CFSE's Industrial Medical Council ("IMC") must be medical doctors. Docket No. 84 at 6. They then make the conclusory statement that "in this case . . . a majority of the [IMC's members][8] are active market participants in the occupation." *Id.* However, the Worker's Compensation Act does not specify, nor do Plaintiffs indicate, the type of medical doctors that are IMC members. Thus these doctors could be gynecologists, neurologists, gastroenterologists, or many others that do not compete with chiropractors in the worker's compensation market. In addition, IMC members are prohibited from having any financial or professional relationship with the CFSE. P.R. Laws Ann. tit. 11 § 1c.

---

[7] Plaintiffs argue that the CFSE is controlled by active market participants because four out of the seven members of the CFSE's Industrial Medical Council ("IMC") are medical doctors. Docket No. 84 at 6. However, Plaintiffs' argument is based on Plaintiffs' incorrect statement that the IMC is part of the governing BOD of the CFSE. *Id.* Had Plaintiffs read the Worker's Compensation Act, they would have realized that the IMC is a separate body from the BOD. P.R. Laws Ann. tit. 11 §§ 1b-2, 1c. The BOD is the only governing body with decision making authority in the CFSE. P.R. Laws Ann. tit. 11 § 1b-2. Any action taken by the IMC must first be submitted to the BOD for ratification. P.R. Laws Ann. tit. 11 § 1c. Therefore, the fact that four IMC members are medical doctors does not warrant the conclusion that the CFSE is controlled by active market participants.

[8] Plaintiffs referred to the IMC members as decision makers. However, the Court has already pointed out that Plaintiffs were incorrect in deeming IMC members the decision makers of the CFSE. *See supra* note 7.

Thus, even if IMC members are the types of medical doctors that could compete with chiropractors generally, they would not be competing for the specific patients that receive CFSE benefits because IMC members cannot receive patients from the CFSE. Thus, Plaintiffs have failed to plead that the doctors on the IMC are active market participants.

Second, even if we assume that the doctors on the IMC are active market participants, the IMC does not have sufficient authority to dictate CFSE policy. The IMC is responsible for, *inter alia*, designing guidelines for the adequate treatment of most medical conditions for employees who receive CFSE benefits. P.R. Laws Ann. tit. 11 § 1c. However, the BOD must ratify the guidelines for them to take effect. *Id.* Thus, even though the CFSE could take anticompetitive actions against chiropractors through these guidelines, only the BOD —which is not controlled by active market participants and does not present a risk of pursuing private interests, *see supra* at 15-16— has the authority to take these actions. This oversight by the BOD sufficiently cures any risk that the doctors on the IMC might use CFSE policy to further their own private interests.

Third, unlike in *Board of Dental Examiners* where Board members were elected by other dentists and were not removable by a public official, the CFSE's BOD's members are all elected by the Governor and the Governor has the power to remove them. P.R. Laws Ann. tit. 11 § 1b-2. This reduces the risk that BOD members would pursue private interests because the Governor should appoint individuals he believes will carry out state interests, and he can remove a member for failing to do so. Accordingly, there are sufficient measures in place to achieve the objective of the active supervision requirement of sufficiently ensuring that CFSE policy is indeed the policy of the State and that the CFSE is not furthering private interests. *See Hallie*, 471

U.S. at 46-47. Therefore, there is no need to impose the active supervision requirement on the CFSE.

Notwithstanding *Bd. of Dental Examiners*, the current case is analogous to *Hallie*, where the Court held that the active supervision requirement was not needed for municipalities. 471 U.S. at 46. In *Hallie*, the Court concluded that there was little or no danger that a municipality would engage in private anticompetitive conduct. *Id.* at 47. Instead the Court reasoned that "the only real danger is that [the municipality] will seek to further purely parochial public interests at the expense of more overriding state goals." *Id.* However, the Court concluded that the clear articulation requirement was sufficient to mitigate this danger. *Id.* ("Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function."). As the Court has already discussed, like the municipality in *Hallie*, there is little to no danger that the CFSE will engage in anticompetitive conduct to further private interests. *See supra* at 16-18. Instead the only danger would be that the CFSE would act to further the specific interests of the CFSE, rather than "more overriding state goals." *See id.* However, like in *Hallie*, this danger is sufficiently mitigated by the clear articulation requirement and therefore active supervision is not needed.

Thus for the reasons stated above, this Court holds that the CFSE is not required to show that it is actively supervised by the State to claim *Parker* immunity. Since the Court also holds that the CFSE has met the clear articulation requirement, *see supra* at 9-12, the CFSE's actions are hereby immune from Sherman Act liability under *Parker*. Thus all of Plaintiffs'

Sherman Act claims are dismissed pursuant to the state-action doctrine. Accordingly, there is no need for the Court to consider whether Plaintiffs sufficiently pled their Sherman Act claims.

CONCLUSION

In view of the foregoing, Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Sherman Act claims are hereby dismissed *with prejudice*. The only remaining claims in this case are Plaintiffs' First Amendment retaliation claims against Defendant the CFSE and Defendant Estrada; and Plaintiffs' Puerto Rico law claims against all Defendants.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of December, 2015.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge